## JOHN PARKINS' ADM'RX. *vs.* JOHN BENNINGTON.

Construction of the term "settlements under the hands of the parties" in the old act of limitations of 1793.

Under the act of 1792 an executor or administrator being prohibited from paying accounts against the estate of his testator or intestate of more than *three* years standing, it was held that he could not by his promise revive a debt thus barred by limitation

But if the debt were not barred by limitation at the decedent's death, a promise of the executor or administrator would prevent the act from running.

Writ of error to the Superior Court in and for Newcastle county. The Court of Appeals in this case consisted of the *Chancellor* and Judges *Black* and *Harrington.*

☞ See a statement of the case ante page 128.

*Mr. J. A. Bayard,* for appellant.

First. The implied promise of Mrs. Parkin the administratrix, does not prevent the act of limitations from being a bar to the plff's. claim. The distinct admission of an administrator is not sufficient to take a case out of the operation of the act according to the late decisions in England, but it requires a promise, and a promise of *all* the administrators. It was admitted below that from a necessary construction of the fifth section of the act of 1792, (2 *Del. Laws* 1033,) the promise of an administrator would not revive a debt barred by limitation. In the act of 1829 the provision which compelled this construction is omitted, and the question here is which law applies to this case. And here I cannot but regret the omission. According to the proper relations an administrator bears to the estate of his intestate he ought to be prevented from reviving the liabilities of the intestate. Being, as he frequently is, unconnected with the parties entitled to the estate, unacquainted with the facts and having no interest to prevent incautious admissions in relation to debts not justly due, the policy of giving him the power to do so is doubtful. It gives him too the power of a partial and arbitrary administration

of the estate, reviving the claim of one and declining to do so for another, without, in either case, such personal knowledge of facts as can enable him to decide correctly. A uniform rule of conduct for administrators is certainly better than one subject to their own pleasure.

Does the old act of limitations apply to this case? This act is repealed by that of 1829, but the repealing clause expressly saves any action, cause or matter, which should be barred before September 1829, according to the original law. No promise of John Parkin is proved. The debt was barred as against him at the time this last act passed. It was barred as early as 1823 or 4. No promise of his is proved after the passing of that act, for he was then dead. And no promise by the administratrix could revive it, for it is one of the cases excepted out of the repealing clause of the act of 1829, and still left to the operation of the old law.

But if the latter act did apply, it would not avail in this case. It requires the *express* promise of an administrator to remove the bar; and a promise also by *all* the administrators. The courts in England, proceeding on notions of particular equity, have, by judicial legislation, almost repealed the statutes of limitation; they are now coming back to a more rational construction by requiring an express promise. The ground of limitation is the peace of society. Interest reipublicæ sit finis litium. They do not proceed on the ground of payment. 8 *Com. Law Rep.* 68. The promise must be to the party. Mrs. Parkin's direction to the English executors is not a promise of this kind. 13 *Com. Law Rep.* 273. Promise to pay when able, not binding until able. Here they cannot rely on the promise of Mrs. Parkin to pay the principal alone, as a promise to pay principal and interest. It was conditional and not binding as it was not accepted. The order to the English executors if it could be relied on as the promise of Mrs. P. would not be binding without the assent of the other executors. 21 *Com. Law Rep.* 478. Neither an acknowledgment by all the executors, nor a promise by one, will take a case out of the act of limitations.

*Mr. Booth,* for respondent:

Relies on the promise made by Mrs. Parkin before the referees. She is the only representative of the estate of her husband in the United States, and the only person who could be sued here. There is no plea of plene administravit; it is therefore admitted there are sufficient assets in this country to pay.

Whether the act of '92 or that of '29, applies to this case the claim is not barred. It is supported by a species of evidence that takes it out of the mischief which those acts were intended to provide against and out of the acts themselves. The act of '92 has reference to actions on open and unsettled accounts, unascertained and unacknowledged liabilities. And therefore the supplement of 1793 excepts from its operation bills, notes, &c.; and *settlements* under the hands of the parties. This is not an open and unliquidated account. Here is the written acknowledgment of John Parkin, dated in 1820, admitting his indebtedness to Bennington, ascertaining the amount, and ordering payment.

The acts of limitation operate on the remedy and not on the cause of action. Their object is to prevent the suing on stale demands when papers are lost or witnesses dead. They were not designed to bar claims susceptible of clear proof from the parties own written acknowledgment. According to the other side the new promise does not draw down to it the original cause of action, but is itself a new cause of action supported by the original liability as a consideration for the new promise. In this view the act of '92 cannot apply to the new promise in this case, for it was not in existence, and under the act of '29 the promise of Mrs. Parkin is sufficient to revive the debt. And the repeated acknowledgments of Mrs. P. would be equally effectual, for by the law as established in this state by repeated decisions a clear acknowledgment of a debt removes the statutes as effectually as a promise.

Then as to the promise of all the executors being necessary. It might be if all were sued. In the case cited by Mr. Bayard, all the executors were sued and a promise of but one proved. The plff. was therefore nonsuited. It would be singular if a man should die here leaving property here and in England, and administration taken out in both countries by different persons, a debt cannot be collected here until the promise of the English executor was obtained. Mrs. Parkin however did promise here, and the English executors assented to that promise and paid a part of the debt in pursuance of it.

*Mr. Bayard*, in reply.

The same principle that prevents an administrator from voluntarily paying a debt barred by limitation, prevents him from reviving such debt by his own promise. This was the construction of the act of '92. John Parkin died in 1826. This action was barred in 1828. It is agreed that no promise of the administrator would avail before the act of '29, the repealing clause of which saves from its operation such claims as were already barred. The old acts as to the cases to which they apply are as much in force as ever. Did they affect this case in September '29? If so, they continue a bar to this day. On this point I rely for a reversal. It is impossible to construe this letter of Parkin to Lovel of October 1820, a settlement under the hands of the parties, such as is excepted by the act of '93 out of the operation of the act of '92. It may be as Mr. Booth suggested, such an acknowledgment under the hand of the party of a subsisting demand as is excepted out of the act of 1829, but that does not affect the case, for whether barred or not by the act of '29, it is barred by the old act, which is the only one applicable to it.

The construction now to be put on the act of 1829, in relation to the effect of an administrator's promise is new, and it is a proper occasion for the court to consider whether the old or the later English decisions on this subject are founded in the best reason. I have endeavoured to show that the policy of permitting an administrator to revive debts barred, even by an express promise, was at least doubtful—to extend it to the admissions of an administrator would be far more objectionable.

*Curia advisare vult.*

*Mr. Justice Black* delivered the opinion of the court.

Black, J.—"This case comes before the court on a writ of error to the Superior Court of Newcastle county, to which is annexed the bill of exceptions containing the evidence in the cause.

The narr.contains the usual money counts and also a count on an account stated by John Parkin in his lifetime. There is also a count on a promise by the administratrix to pay the money lent or advanced to, or received by the testator, and a count on an account stated between the plff. below and Mary Parkin the administratrix.

It appears from the bill of exceptions, that Bennington had deposited in the Burlington Bank in Yorkshire, £400 sterling, for which he received a check or certificate of deposit. That on the 21st April 1819, the day before he sailed for the U. States, he handed this check to John Parkin to be delivered by him to one William Robson, to be kept by the latter until Bennington should send from America for the money. This bank paid an interest on the deposits of four and a half or five per cent. Parkin did not deliver the check to Robson, but some short time after he received it, drew the money out of the bank: Parkin came to the U. States in September 1820; and, on the 3rd of October 1820, on being called on by Bennington, he addressed a communication to Richard Lovel his agent in England, which he handed to Bennington, and which is in the following words; to wit:—

*"Philadelphia,* October 3, 1820.

Mr. Richard Lovell. Dear Sir, The bearer hereof, John Bennington, will wait upon you (with Christopher Morris of Harpham, in order to prevent any imposition, being personally known to him) to receive from you the money or securities which I left to pay him the sum of £400, as by the account sent from Liverpool, by my brother Wm. Parkin.

*(Signed)* JNO. PARKIN."

John Parkin died in April 1826. In May 1828 Mary Parkin, who had administered on his estate in the state of Delaware, directed the executors named in the will, who resided in England, to pay Bennington the principal sum of £400, but no interest, admitting that that sum was at the death of her husband John Parkin due from him to Bennington, and further instructed these executors that if they were short of funds, she would pay the balance in America. In October 1829, the executors in England paid to Bennington £100. In May 1830, Mary Parkin, the administratrix, admitted that £400 was due from her husband at his death to the plff. below, and agreed to pay £300 the balance of principal remaining due after crediting the payment made by the executors in England, but contested the interest. This action was instituted on May 27, 1830.

The plaintiff in error insists that this claim is barred by the act of limitations passed on the 4th day of February, 1792. (2 *Del. Laws* 1031.) That it was barred by that act in April, 1826, when John Parkin died, and that being so barred at the decease of Parkin, no acknowledgment or promise made by the administratrix afterwards can take the case out of that act or revive the debt or cause of action so as to render the *estate of John Parkin* liable for it.

Under the act of 1792, the voluntary payment by executors or administrators of accounts or demands against the estate of a deceased person of any longer standing than three years next before the death of the deceased is prohibited; and our courts have held, prior to the passage of the act of 1829, and as we think correctly, that an acknowledgment or promise by an administrator or executor to pay an account or demand thus barred would not revive such claim so as *to render the estate of the deceased* liable for its payment. If it could be thus revived the executor or administrator might do in an indirect mode what by that law he was expressly prohibited from doing. If however the debt was not barred at the death of the intestate there is nothing in the act of 1792 preventing the administrator from keeping the cause of action alive or the act of limitations from affecting or barring it by his promise or acknowledgment.

The important question in this cause is whether the cause of action on which the present suit is founded, is of that description, or of that class to which *three* years is a bar by the act of 1792, and therefore barred by that act.

The act of the 18th June 1793, (supplementary to the act of 1792 2 *Del. Laws* 1133) declares—That nothing contained in the act of 1792 shall extend to any demands founded on mortgages, bonds, bills, promissory notes or settlements under the hands of the parties concerned. Bonds, bills, notes and settlements under the hand of the parties are placed on the same footing as to time; exempted from all operation of the act of 1782; and, according to the decisions of the courts in this state, were not affected by any of the acts of limitations of the state until the act of 1829 was passed.

The count upon the account stated by John Parkin, in his lifetime is the important count in the declaration. Such a count is supported by evidence of an acknowledgment on the part of the deft. of money due the plff. upon an account between them—or by a promissory note or written acknowledgment of indebtedness by the defendant; *(*2 *Starkie* 123;) and it is unnecessary to set forth in the narr, or to prove, the items of which the account consists or is the subject of the original debt. *(*2 *Starkie* 123; 1 *Chitty's Pl.* 344-5; 1 *Term Rep.* 42, *n.)* On the 3d October, 1820, John Parkin delivers to Bennington a communication to Richard Lovell in which he states— "Bennington will wait on you to receive from you the money or securities which I left to pay him the sum of £400 as by the *account* sent from Liverpool by my brother William Parkin." Whether the account referred to as having been sent by his brother was an account of the *"money or securities left"* or an account between him and Bennington is not clear, nor perhaps is it very material. Here however is the written admission and acknowlengment of Parkin, that he then stood indebted to the plff. below in the sum of £400; that he had made provisions for its payment by placing funds, money or securities in Lovell's hands for this specific purpose; and that an account, either of the transactions or dealings between him and Bennington, or of the funds and securities deposited, had been forwarded by his brother; and instructing the agent with whom this deposit had been made that Bennington would proceed from the Uni-

ted States to England, to receive from him the money or securities which he, Parkin, had left in his hands to pay him.

Had an account current been drawn out at length and signed by both the parties, could it more strongly have evidenced a debt, or had a more solemn or binding character, than the writing on which this action is founded? It not only admits the debt which he owes, but specifies the provision made for its payment, and directs the payment according to the provision made. Was it not the design of the act of 1793, to exempt from the operation of the act of limitation of 1792, to which it was a supplement, those claims which were specially adjusted and settled by the parties, and which were sanctioned by the signature of the party indebted. Here the party who is to pay, on payment being demanded, promises to give a check for it, and signs the acknowledgment of his indebtedness and provides in it the means of payment, places this written evidence of the debt in the hands of the other party to enable him to receive the money due and as evidencing the exact amount he owes. What greater solemnity or obligation could attach to a promissory note, or to an account settled under the hands of the parties, than to this written paper? Is not such an acknowledgment of indebtedness at least within the equity of the act of 1793?

This court in 1832, in the case of *James Booth's executor* vs. *John Stockton's executor (ante* 51,) when considering a question depending on this same act of 1793 said "they would not confine themselves strictly within the letter of the statute, but that any case coming clearly within its spirit might be recognized as not barred"; and they laid down the rule "that any engagement which of *itself* would be the *foundation* of an action, without needing proof aliunde to support it would be an exception to the operation of the statute." We consider the paper signed by Parkin and handed to Bennington as of this character, and within the principle established in that case. It is the foundation of the action; no proof of the account, items, or matters for which it was given was necessary; under the account stated it was evidence of a specific indebtedness; we therefore consider that it is clearly within the spirit of the exception of the act of 1793, as showing a settlement between the parties sanctioned by the signature of the party on whom the obligation of payment rests, and that therefore it was not barred by the act of 1792. As the debt was not barred by the act of 1792, it was not barred at the death of John Parkin, as that was the act of limitation which was in force at his death; and as it was not *then* barred it was clearly competent for his administratrix by her promise or acknowledgment to keep the claim alive and free from the operation of the act. In May 1828 she directed the executors in England to pay Bennington £400, and they, conforming to this order, paid £100, the amount of funds in their hands. In May 1830 she admitted her husband owed Bennington £400 at his death. At the time when these acknowledgments were made, the claim of the plff. was not barred, as it was not within the act of 1792. The claim is not barred by the act of 1829, for this suit was instituted in the court below on May 27th 1830, and the 12th section of that act declares—that its provisions shall not extend to any acknowledgment under the hand of the party

of a subsisting demand, if an action be brought thereon before the first day of September, 1830.

We are therefore unanimously of opinion that the judgment of the court below be *affirmed*."

*J. A. Bayard*, for appellant.
*Booth*, for respondent.